**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KATHLEEN A. BAUMANN, | No. CV 08-0164-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Pending before the Court are the Motion for Summary Judgment of Plaintiff Kathleen A. Baumann (Dkt. # 14) and the Cross-Motion for Summary Judgment of Defendant Michael J. Astrue, Commissioner of Social Security (Dkt. # 20). For the reasons set forth below, the Court grants Plaintiff's motion and denies Defendant's cross-motion.

**BACKGROUND**

On February 16, 2005, Plaintiff applied for disability insurance benefits, alleging a disability onset date of June 2, 1998. (R. at 25; *see* R. at 63.) Plaintiff's date last insured ("DLI") for disability insurance benefits, and thus the date on or before which she must have been disabled, was December 31, 2003. (R. at 25.) Plaintiff's claim was denied both initially and upon reconsideration. (R. at 54; R. at 50.) Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (R. at 48.) The ALJ conducted a hearing on the matter on November 29, 2006. (R. at 547-70.)

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (R. at 25-28.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. (R. at 27.) At step two, the ALJ determined that Plaintiff suffered from no severe impairments. (R. at 27-28.) The ALJ first noted Plaintiff's testimony that she "experiences lack of memory, rage, hopelessness, lack of concentration, attendance problems and despair," "forgets to take care of her personal needs such as showering and brushing her [teeth]," and "experiences visual hallucinations and sleep impairment." (R. at 27.) The ALJ then stated that "[t]he medical expert testified that the medical records in evidence date back to October 29, 2004[,] with the first mental health note by Dr. Bernzott. He noted [Plaintiff's] military discharge but found no evaluation in the records." (R. at 28.) The ALJ then concluded:

> Based on the medical expert's testimony and the lack of medical evidence establishing disability prior to the date last insured, the undersigned finds that the objective medical evidence contained in the record does not establish the existence of a medically

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

> determinable impairment through the date last insured that could have reasonably been expected to produce [Plaintiff's] symptoms.

(*Id.*) Thus, the ALJ held that Plaintiff was not disabled. (*Id.*)

The Appeals Council declined to review the decision. (R. at 3-6.) Plaintiff filed the complaint underlying this action on January 25, 2008, seeking this Court's review of the ALJ's denial of benefits.[2] (Dkt. # 1.) Plaintiff filed her Motion for Summary Judgment on September 3, 2008. (Dkt. # 14.) Defendant filed his Cross-Motion for Summary Judgment on November 6, 2008. (Dkt. # 20.)

## DISCUSSION

### I. Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either

---

[2] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

- 3 -

1 outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

**II.    Analysis**

Plaintiff argues that the ALJ erred in denying Plaintiff's application for benefits at step two of the sequential evaluation process. (Dkt. # 16 at 4-14.) "[A]t the second step of [the] sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments 'of such severity' as to be the basis of a finding of inability to engage in any [substantial gainful employment]." S.S.R. 85-28. A "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The "ability to do basic work activities," in turn, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. 96-3p).

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)), and "is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working," S.S.R. 85-28 (internal quotation omitted). Therefore, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687 (quoting S.S.R. 85-28). "'[I]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Id.* (quoting S.S.R. 85-28). Thus, the Court's task in reviewing a denial of benefits at step two is to "determine whether the ALJ had substantial

- 4 -

1  evidence to find that the medical evidence clearly established that [the claimant] did not have
2  a medically severe impairment or combination of impairments." *Id.*

3  In this case, the ALJ predicated his step-two determination on "the medical expert's
4  testimony" and "the lack of medical evidence establishing disability prior to the date last
5  insured." (R. at 28.) Thus, in order to uphold the ALJ's denial at step two, the Court must
6  conclude that either or both of these factors "clearly establish[] that [Plaintiff] did not have
7  a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687.
8  Upon review, the Court cannot do so.

9  First, the medical expert's testimony does not "clearly establish" that Plaintiff's
10 impairments were not severe (in other words, that they did not significantly limit Plaintiff's
11 ability to do basic work activities). In fact, the medical expert explicitly admitted the
12 possibility that Plaintiff could have experienced a disabling bipolar condition before the DLI.
13 The medical expert was asked: "Would the psychological impairments cause a difficult time
14 in sustaining an eight hour work day, five days a week, on a regular and continuing basis in
15 December of '03?" (R. at 557.) He replied: "It could, yes." (*Id.*) During examination by
16 Plaintiff's counsel, the medical expert even agreed that Plaintiff's bipolar symptoms must
17 have predated their date of first diagnosis: "[Y]ou can assume that the symptoms didn't just
18 pop up[;] . . . moderate symptoms . . . aren't something that were just going to come up
19 overnight." (R. at 556.) The medical expert also pointed out that bipolar disorder can often
20 be improperly diagnosed as depressive disorder (R. at 553), and the medical expert agreed
21 that Plaintiff has a "long history" of depressive disorder that predates any direct diagnoses
22 in the treatment notes (R. at 558). The medical expert further stated, in response to a
23 question about whether Plaintiff was disabled prior to the earliest treatment notes, that "it's
24 possible with these notes that they support going back some." (*Id.*) The medical expert then
25 explained that he had "a difficult time putting a number on" how long it took for the
26 symptomatology to surface, and he refused to speculate about any date before the earliest
27 treatment notes. (R. at 556-57.)
28

Thus, the medical expert's opinion was that Plaintiff's disabling bipolar disorder could have existed before the DLI – he simply was not able to definitively say so one way or the other.  Because the medical expert refused to offer an opinion on this point, his testimony does not "clearly establish[] that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb*, 433 F.3d at 687.

The ALJ's second factor ("the lack of medical evidence establishing disability prior to the date last insured") also does not "clearly establish[] that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Id.*  The ALJ apparently reasoned, as Defendant argues to this Court, that there is no evidence of disability prior to the DLI because all the treatment notes in the record were made after the DLI.  However, the fact that all the medical records post-date the DLI does not mean that all the medical evidence in the records post-dates the DLI.

To the contrary, the medical records contain evidence that could be read to indicate that Plaintiff suffered from a disabling bipolar disorder prior to December 31, 2003 (the DLI). On June 18, 2005, Dr. Alikhan stated that Plaintiff "has a long past history of bipolar disorder[,] which started in 1976 . . . ."  (R. at 157.)  Dr. Alikhan further noted that Plaintiff was "hospitalized twice for depression and suicide attempts" while she was in the Navy,[3] and that she "received [an] honorable medical discharge due to bipolar disorder."  (R. at 158.) Dr. Alikhan then diagnosed her as currently suffering from bipolar disorder.  (R. at 159.) The Department of Veterans Affairs, in finding Plaintiff totally impaired by her bipolar disorder (R. at 83-85), agreed that Plaintiff's "currently diagnosed bipolar disorder was more likely than not manifested during the veteran's active duty military period of service" (R. at 84). In fact, one of the physicians evaluating Plaintiff for the Department of Veterans Affairs, Dr. Wandry, explicitly found that Plaintiff's current bipolar condition has persisted since her time in the Navy in the 1970s: "[I]t is clear that the bipolar dis[order] seen today had its origins in [the] bipolar disorder seen and treated while she was in the service."  (R.

---

[3]Plaintiff served in the United States Navy from 1976-77.  (R. at 59.)

- 6 -

1  at 298.)  Another physician, Dr. Tyler, made a similar observation.  (R. at 302.)  Dr. Tyler
2  also concluded that Plaintiff's bipolar symptoms "have interfered in many aspects of her life
3  including . . . . occupationally."  (*Id.*)  Dr. Tyler then stated that "[i]t is not likely that
4  [Plaintiff] will be able to obtain and hold gainful employment until she receives intensive
5  appropriate outpatient therapy." (*Id.*)  These aspects of the post-DLI medical records provide
6  at least some evidence that Plaintiff's bipolar condition has persisted for over thirty years and
7  has interfered with her occupational capabilities.

8         That inference is reinforced by the near-constant diagnoses of bipolar disorder that
9  permeate the treatment notes that are in the record.  Plaintiff was assessed as having bipolar
10 disorder on June 19, 2006 (R. at 288, 306), October 3, 2005 (R. at 301), September 19, 2005
11 (R. at 296), August 11, 2005 (R. at 331), June 20, 2005 (R. at 347), May 24, 2005 (R. at
12 351), March 23, 2005 (R. at 374, 387), March 1, 2005 (R. at 388), February 8, 2005 (R. at
13 214), January 28, 2005 (R. at 270), January 1, 2005 (R. at 393), December 21, 2004 (R. at
14 223), December 7-8, 2004 (R. at 224, 267), November 18-19, 2004 (R. at 402-03), November
15 9, 2004 (R. at 226), November 1, 2004 (R. at 406), and throughout September and October
16 of 2004 (R. at 229, 232, 239-40, 268, 407-16, 420-26).  Bipolar disorder was repeatedly
17 characterized as being among Plaintiff's "active problems."  (R. at 202, 207, 215, 219, 368;
18 *see also* R. at 206, 212, 303.)  The fact that Plaintiff has a history of bipolar disorder is also
19 explained in the progress notes.  (*See, e.g.*, R. at 169, 198.)  Thus, the Court cannot say that
20 the medical records "clearly establish[] that [Plaintiff] did not have a medically severe
21 impairment or combination of impairments" prior to the DLI.  *Webb*, 433 F.3d at 687.

22        Although the evidence about Plaintiff's condition prior to the DLI certainly does not
23 mandate a finding of disability, or even a finding of bipolar disorder, there is some
24 circumstantial evidence to support Plaintiff's application in this regard.  Because step two
25 requires only a "de minimis" showing, *see Smolen*, 80 F.3d at 1290, the ALJ erred in denying

Plaintiff's application at this step.[4] *See Webb*, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of [the claimant's] overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two.").

### III. Remedy

Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case either for further proceedings or for an award of benefits. *See Reddick*, 157 F.3d at 728. The rule in this Circuit is that the Court should:

> credit[] evidence and remand[] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292. Here, there is insufficient evidence or analysis beyond step two to permit the Court to award benefits. Specifically, the ALJ has yet to evaluate whether the evidence in the record about Plaintiff's condition before the DLI is sufficient to establish an impairment that met or equaled a listed impairment as of that time. Thus, there are "outstanding issues that must be resolved before a determination of disability can be made." *Id.* The Court will therefore remand for further proceedings. *See Webb*, 433 F.3d at 688 (finding that there was sufficient evidence of a severe impairment to pass step two and yet remanding for further proceedings so that the ALJ could continue the sequential evaluation).

---

[4] Plaintiff makes a number of arguments in her motion that are more properly directed at later steps in the sequential evaluation process. The step-two severity determination, the Court reiterates, "is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." S.S.R. 85-28 (internal quotation omitted). Since the ALJ did not reach the later steps in the sequential evaluation process at which Plaintiff's other arguments are aimed, the Court will not reach those arguments.

**CONCLUSION**

The ALJ erred in denying Plaintiff's application for benefits at step two, and further proceedings are required in order to determine if Plaintiff is entitled to those benefits.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. # 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Dkt. # 20) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for further proceedings.

DATED this 20th day of January, 2009.

G. Murray Snow
United States District Judge